Thank you very much, Mr. Rowe. Good to see you here again. I believe, Mr. Cruz, you are going first to address Setzer and the collateral review issues. Good morning, Your Honors, and may it please the Court. I'm Reuben Cruz, representing George Hopkins, the appellant in this case. I will be addressing Setzer and its application on collateral review. As you just heard, I'm here with Amelia Rinaldi, and she is also representing the appellant. And she will be addressing the ineffective assistance of counsel and the prejudice that Mr. Hopkins suffered. Your Honors, I'd like to reserve two minutes for rebuttal, please. It's granted. Your Honors, Mr. Hopkins respectfully requests that this Court vacate the District Court's judgment and remand the case with instructions for the District Court to exercise its inherent discretionary sentence in power. In light of the Setzer decision, to determine whether Mr. Hopkins' federal sentence should run concurrent to his state sentence. I'm trying to understand the position that you have taken in the reply brief that was recently filed. You do acknowledge that there was a circuit split here, right? Your Honor, we acknowledge that there was a circuit split with regard to consecutive sentencing. But you tried to explain away that circuit split, so that's what I want to try to understand. Yes, Your Honor. The circuit split, there was concern among the circuits regarding consecutive sentencing. And really this was about the reasonableness of the sentence and having the federal judge at the beginning of the cycle, before a state sentence is imposed, being able to impose a reasonable sentence. Some of these circuits believe it was more appropriate for the judge at the end of the line, who can look at all the facts available, to determine what type of sentence would be appropriate and whether or not it should run consecutive or concurrent. In our case, we're dealing with a situation where the federal judge, Judge Conner, had the ability to run a concurrent sentence, a consecutive sentence, I'm sorry, a concurrent sentence. There was never a circuit split regarding concurrent sentencing. He didn't believe he had the discretion or the authority. He asked counsel whether he could do that, and the affirmative stated that power was not available to him. In light of such a decision, we know the Supreme Court has determined that federal judges do indeed have that discretionary power, and have always had that power. The Sentencing Reform Act and Section 3584 never restricted that power in any way whatsoever. They merely provided some parameters or guidelines when the sentencing judge actually didn't exercise that discretion that they've always had. But I think following up on what Judge Smith was inquiring about is there was a circuit split suggesting that it wasn't so clearly established to the reasonable jurist as to what they could or could not do, and therefore, under Teague, it would be like a new rule. Yes, Your Honor. And therefore, not applicable. Yes, Your Honor. Dealing with consecutive sentencing, you see, there are different considerations. How can you draw that distinction between, you know, you're saying the judges didn't have, there was a circuit split whether the judges could do or could impose a consecutive sentence, but doesn't that also then go to also the question of whether they could impose a concurrent sentence? Not necessarily, because the prejudice is different. So the presumption was that they would be concurrent? No, the presumption is if the judge is silent, it runs consecutive, as Section 3584 dictates. Judge Conner in this case was considering concurrent sentencing, and that's why he asked counsel specifically about his ability to do so. And we feel there's a high probability that he would have imposed a concurrent sentence for Mr. Hopkins in this case. Well, that's segwaying into your adversary's argument about prejudice, so I don't know if you want to go there, if your adversary is going to take that. Because if you do, I'll be glad to chat with you about it. Not so much? I would like to, for Ms. Vernaldi in that case, but what I'd like to impress upon you today is we do not feel Cesar is a new rule whatsoever. The Supreme Court utilized the traditional common law history that judges have always had the discretion and authority to sentence concurrent or consecutively. They also used textual interpretation, basic statutory interpretation of 3584 to determine that that statute never actually restricted the judge's power in any way. So is it your view that Cesar is a stand-alone 2255 basis for relief? And the way that you get to that is you're saying this was not a new rule but an old rule that supplies retroactive. Your Honor, that is exactly what we're saying, because Cesar doesn't create a new obligation for the government. It doesn't establish any new right. All it does is clarify what's always been inherent in the federal sentencing judge's power. So if you're saying that it's a basis that could give relief under 2255 and it's not of constitutional magnitude, right, that you have to be relying on the – that it has to be a complete miscarriage of justice for it to get relief under 2255. But how do you have a complete miscarriage of justice here where the sentencing judge sentenced within his authority? The claim he's had all along to run concurrent or consecutive under his discretion, how could there be a miscarriage of justice then? We feel it's a mischaracterization of justice because the opposing counsel is saying he already had a bite at the apple. But the judge actually didn't believe he had this power at all. How do you say that he didn't believe that? Where in the record does he say, I lack the authority to do this? Had I thought I had the authority, I'd do something different. He definitely engages about whether or not the conduct that was the subject of the state sentence is also going to be the subject of penalty in connection with the federal sentence. But where in the record does it say, where the district court says, I don't have the authority to do this? Judge Conner specifically asked counsel defense, the federal public defender, and the federal public defender stated that although concurrent sentence would be appropriate, would be nice in this matter, he did not have the authority to do so. Can you direct us to any cases that have held that a district court may impose a consecutive sentence but not a concurrent sentence? Were there any such cases at the time Judge Conner imposed sentencing? Actually, your honor, in Sally v. U.S., I'm sorry, these are circuit court cases. You asked specifically for district court cases? No, I just asked about cases, period. In the second circuit in Sally v. U.S., there was a conflict between the state and federal sentences, and the court made it clear that the district court sentence does not have to give way to any state court sentence. So in effect, the district court can impose their sentence either consecutive or concurrent, regardless of how the state sentence and the state sentencing judge imposes their sentence. In U.S. XRL Lester v. Parker here in the third circuit as well, there was an issue regarding the federal court imposing their sentence prior to the state court decision being handed down. And you would acknowledge, based on your description of the previous case and where I believe you're going, you would agree, would you not, that none of those cases were holdings of the nature that I've just asked about? I concur, your honor. The third circuit case was more a due process challenge, but we feel that the Setzer decision clarified any confusion that there might have been out there. In essence, by clarifying and not instituting new obligations and new rights, it should be applied retroactively as an old rule, as the case of Levy v. Sterling determined that when a rule is not new, its application to pre-promulgation conduct is allowed. All right, Mr. Cruz, your time is up. We'll hear from Ms. Rinaldi. Thank you, your honor. Thank you. Good morning, and may it please the court. My name is Emilia Rinaldi, and as co-counsel mentioned, I also represent George Hopkins, and I will be discussing why Mr. Hopkins received constitutional inadequate assistance from counsel. In the United States, in Strickland v. Washington, the Supreme Court stated a task that is to be applied in cases of ineffective assistance of counsel. The Strickland task has two prongs, and both prongs in this case have… Did the pre-sentence investigation report in this matter include any statement to the effect that the judge could impose a concurrent sentence? The pre-sentence report only included the calculations of the offense levels. It did not make a recommendation on whether or not the judge should impose concurrent or consecutive sentences. However, the basis for two of the enhancements used to set the sentence bracket were strictly based on conduct that Hopkins was already being found guilty in state court. So that created a situation where Mr. Hopkins was being effectively sentenced twice for the same conduct. What authority was available to defense counsel at the time of sentencing that he could have relied on or she could have relied on to argue for concurrent sentences or to tell the district judge that there existed authority to impose the federal sentence as concurrent to a yet-to-be-imposed state sentence? Well, Your Honor, as court counsel mentioned at the time, while there was a circuit split regarding consecutive sentences, there was not a circuit split regarding concurrent sentences. And that is a big distinction because the realities of imposing concurrent sentences are very different than the type of analysis that a judge would make in imposing a stacking sentence effectively. Let's assume, for argument purposes, that you're correct in that distinction. But under Strickland, you still have the second step that you have to reach, prejudice. And so even if Mr. Hopkins' counsel had asked on the spot for a concurrent sentence, how do we know the district court would have imposed one? I mean, to put it another way, wouldn't the district court have had to first accept that it had the authority and then decide to exercise its discretion in sentencing that way? That sounds doubly speculative to me. Well, Your Honor, under this court's precedent in Lewis v. Horn, the only thing that Mr. Hopkins needs to establish is a reasonable probability that the federal judge would have made a different decision. In this particular case, the sentencing transcript shows in several points how the thought process that the federal sentencing judge was going through. The fact that the sentencing judge specifically, and I quote, said, I'm concerned about that, meaning I'm concerned about the possibility of this double charge, double sentence on the same conduct, we feel is indicative of the state of mind of the judge at the time. Not only that, the sentencing judge specifically asked the government's attorney to brief him on whether or not he could order a concurrent sentence. And we feel that this shows that there is a fair probability that the judge would have ordered concurrent sentences. So you're saying that the government made a submission at the request of the district court judge as to his authority? The government argued that Hopkins should be charged as per the maximum in the sentencing bracket that he was currently on. But isn't that different, advocating for a maximum sentence certainly is different from telling a judge you don't have the authority to do anything but run it consecutively? Or you can't make a prejudgment as to how it should run. So how does that further your argument? The question that the sentencing judge asked the prosecutor was to explain the point of the overlapping between the conduct that was being used for the sentencing bracket in federal court and the conduct he was already being, his waiting sentence in state court. And the prosecutor made argument that it was proper for the judge to consider that conduct and use that conduct to set a sentence for Mr. Hopkins. And part of the argument was the fact that no matter whether or not the two enhancements were being calculated into the level of offense was not important because Hopkins was going to be a career offender anyways. So his offense level was going to be whatever it was going to be, 31 I believe it was, regardless of whether or not it was better conduct. The victim enhancement, whether it applied or didn't apply after his initial sentencing, for his purposes it didn't matter. Exactly. However, this court, based on the Supreme Court's opinion that Hopkins was not, in fact, a career offender, eliminated that basis of foundation for the sentencing bracket. So that sentencing bracket is now solely standing upon the disconduct that is basically being charged twice. But then didn't this court, in the prior opinion, say that that enhancement was OK? Yes, Your Honor. The enhancements are OK. The enhancements were straight from the sentencing guidelines and they were properly issued. However, again, that goes to the fact that the sentencing judge might very well, now knowing that he has the authority to order concurrent sentences, might very well take that into account. Might very well take into account the fact that Hopkins is serving time, basically twice, twice the time for the same type of conduct. Can I just ask one more question? Do you take anything from the fact that in the district court judge's opinion from which you're appealing? Yes. He makes no comment at all that says, if I could have, I would have. Don't you take anything from his silence? No, Your Honor, because frankly, it seems like he only focused on whether or not census could be applied. So it seems to us that his primary concern in the current appeal was that he just did not have the power and census would simply not be applied in this case. So I don't think from that we can infer that he just has no opinion and no willingness to order a concurrent sentence. All right. Thank you. Thank you very much, Ms. Rinaldi. Mr. Consiglio. Good morning, Your Honors. Mike Consiglio on behalf of the United States. The issues presented before the court today are essentially compounded to two issues. First, whether the defense counsel provided reasonably effective assistance of counsel to Mr. Hopkins. And second, even if he did not provide effective assistance of counsel, whether Mr. Hopkins suffered any prejudice as a result of those circumstances. The government respectfully submits to the court that on both counts, Mr. Hopkins fails. First of all, with respect to the reasonably effective assistance of counsel, the law at the time of Mr. Hopkins' sentence was unclear in the circuits. I guess you would concede as a matter of basic principle that a censor cannot be a new rule if it merely reaffirmed a preexisting legal regime, right? That's right. And it's the government's position that the new rule, old rule distinction really is not dispositive of the central issue today of whether Mr. Hopkins' counsel was effective at the time he was representing Mr. Hopkins at sentencing. And isn't counsel for Hopkins correct that most of the cases that have been discussed or most of the cases that are out there in the pre-censor split were cases that concerned the imposition of a consecutive sentence, not a concurrent sentence? Yes, Your Honor. However, on that point, it is worth noting that in Setzer itself, the issue was not only consecutive but concurrent. In Setzer, the trial court, the district court imposed a sentence that directed that the sentence be concurrent with a certain underlying state charges but consecutive to the revocation proceedings. And the Supreme Court in Setzer did not address at all whether there was any difference between consecutive or concurrent authority of the district court. The understanding before Setzer from some district judges was that the last authority to impose sentence had the determination or could make the determination whether the sentences should be concurrent or consecutive, correct?  And that appears to be a consistent interpretation through the districts in this circuit and appears to be consistent with what this court was indicating in Bar v. Cogain, in which this court said in that 1990 decision that the district court does not have the powers without power to impose a sentence consecutive or concurrent. But didn't that case deal with, in part, the BOP and its authorities to make certain decisions about credit? Yes. Yes. And that really was the view of what was going to happen when you had a circumstance such as this, where you have a federal sentence imposed first and then a state sentence imposed second. The calculation of who was going to get time credit and how that would be determined would ultimately be made by the Bureau of Prisons using their authority at a later date. So is it your view that defense counsel before the district judge in this case was relying on the language that you've just described in the position he articulated to the district judge, even though the issue in that case was a little bit different? I don't know whether defense counsel specifically relied upon Bar v. Cogain in deciding that, but the fact that multiple other district courts in this circuit had relied upon that language and finding that a district court did not have this authority, the defense counsel was certainly appropriate in reporting to Judge Conner that he did not have authority under these circumstances to impose a concurrent sentence on a yet-to-be-imposed sentence. So with the current status of the law at the time of Mr. Hopkins' sentencing being clear for the Third Circuit purposes, it's hard to say that Mr. Hopkins' counsel was ineffective for failing to predict a change in the law, a change which did not come until six years later when a set service was decided. With respect to the issue of prejudice to Mr. Hopkins, the standard for the court to find a finding of prejudice under these circumstances, it can't be speculative. It can't be that he may have received some benefit as a result of this advocacy of his defense counsel. It has to be a reasonable probability that he would have received some benefit, and in this particular case, it appears to be in compound speculation. In this case, if defense counsel had asked Judge Conner to impose a concurrent sentence with a yet-to-be-imposed state sentence, it's not clear at all whether Judge Conner would have followed that lead, particularly in light of the law as it existed at that particular time. How do you respond to some of the points that were made by your adversary about what Judge Conner was inquiring about during the original sentencing, about the double count of the victim enhancement at the same time he was likely to be sentenced to the violent crime by the state authorities? Yes, Your Honor, and with respect to that, I do wish to clarify some of the remarks that defense counsel made in argument. The request of the government at sentencing for Mr. Hopkins was not a maximum sentence. The request of the government was simply for a guideline sentence, and when confronted with the questioning from Judge Conner regarding whether the victim enhancement, the firearm enhancement, the various enhancements that applied in this case should be considered, the government's response was Mr. Hopkins is a career offender, and his guidelines at that time as a career offender were the same whether those enhancements applied or not. And the argument presented to the court was if Mr. Hopkins was arrested on a summary warrant as opposed to being arrested outside of his probation office and pulling a gun out and nearly shooting a probation officer, he would be subject to the same sentence, the same guideline range as a career offender for the drugs that were ultimately found on him when he was arrested. And the argument presented to the district court at that sentencing was let the state court, who heard his attempted murder trial, decide a fair punishment under those circumstances. Let this court impose punishment for the drugs that were on Mr. Hopkins when he was arrested. And with those circumstances, Judge Conner did impose a bottom-of-the-guideline sentence guidelines as they existed at that time with the classification that Mr. Hopkins was a career offender at that moment. But now move forward. We know there's subsequent history in this case. There's no longer a career offender designation. How does that influence your position? It doesn't influence the position on the reasonableness of the advocacy of this counsel at the time of sentencing. What about the prejudice, alleged prejudice? With respect to the alleged prejudice, the likelihood that Judge Conner would have imposed a concurrent or consecutive sentence, that still does require Judge Conner to anticipate a change in the law that was not clear between the circuits at the time. And secondly, with respect to prejudice, this is compound prejudice. This is not only whether Judge Conner would have been willing to impose a concurrent sentence at that time, but whether the subsequent state judge at the Court of Common Pleas who imposed sentence for the aggravated assault and firearms offenses, whether that judge would have followed the lead from Judge Conner. And in this case, the trial court and the Court of Common Pleas directed that the sentence be imposed consecutive to the federal sentence. Are you saying that if Judge Conner had said the federal sentence should run concurrent with the state sentence, but the state court judge disagreed, Mr. Hopkins would have to serve consecutive sentences? Exactly how that would get resolved in real time is very difficult. It's hard to determine. And it's a problem that even Justice Scalia and the majority opinion in Setzer recognizes that this is indeed a problem, to use his phrase, because it's not clear exactly how all the time credit would get calculated. A lot of the same circumstances that apply in Setzer apply here in Hopkins to this effect. Mr. Hopkins was on two forms of probation, parole, at the time that he committed this particular offense. He was facing a revocation sentence from local authorities and facing a state revocation sentence as well. Exactly how all of this time credit would have ultimately worked out to his benefit is entirely unclear, which goes to the lack of merit to their argument that he suffered any prejudice. Do you know whether Mr. Hopkins is now in state custody? I believe the last time I checked with Mr. Hopkins was he still had time to serve on the federal sentence. I believe that's where he currently is. With respect to the issues of prejudice as well, it is worth noting that perhaps the lack of case law that arose here, and even as the sending opinion in Setzer noted that this issue only came up in a handful of cases, and most of those decisions were a little more than one page, the three or four circuit decisions addressing this issue, because I think that reflects what is the traditional approach from judges imposing a sentence under these circumstances. That traditional approach is allow the second judge, who would almost necessarily have more information, make the decision whether that second sentencing is consecutive or concurrent. Mr. Hopkins was sentenced on the state side within a few weeks of having been sentenced on the federal side? Yes, Your Honor. Can we make anything out of the fact that Judge Conner could have simply deferred his sentencing until after the state sentencing if he wanted to impose concurrent sentences? I guess he could have done that under the circumstances. However, it's clear from the record that the tenor of the federal sentencing was, Mr. Hopkins deserves to be punished for the drug offense that he is being sentenced for, but the more serious conduct is what happened when he shot at a probation officer, and that is going to be in the control of the state judge who is going to be imposing the sentence. He could use the federal sentence as a backdrop, knowing that Mr. Hopkins was, at that time, going to be serving 188 months, that the state trial court judge could fashion a fair sentence knowing he's already going to be away for 188 months. Obviously, that 188-month sentence has been reduced substantially over the course of the intervening sessions. That's why he asked whether he was still in, because he had 92 months. Yeah, there's the reduction of the credit guidelines. You're sentenced in December of 2006. I know it gets complicated with respect to calculation of credit and who has primary custody when. Yeah. Okay. And back to the point about the traditional role of the sentencing judge deferring to the latter judge, in this case, it was entirely appropriate for Judge Conner to not address this issue at all, whether it could be consecutive or concurrent. The latter judge, Judge Lewis, at the Dauphin County Court of Common Pleas, he had the privilege of not only the federal pre-sentence investigation report and not only the privilege of knowing that Mr. Hopkins was going to be serving a 188-month sentence, but in addition, Judge Lewis had the opportunity of listening to the full jury trial regarding Mr. Hopkins and when he shot at the probation officer and all those circumstances around it, as well as Judge Lewis had the opportunity to hear testimony from members from the probation office, members of law enforcement, evidence from a variety of sources that supplemented the federal pre-sentence investigation report. Should we take anything from the fact that, as I asked your adversary, from the fact that the opinion that leads us to the order on appeal presently, that Judge Conner didn't say one way or another what he would have done? Should we take anything from his silence? It's hard to tell. Judge Conner appears to be, in his decision, simply addressing this as a matter of new rule versus old rule. It's the government's position that that does not necessarily guide in this particular case. And why do you say that? The new rule, why isn't that guide? Because it's a measure of the effectiveness of Mr. Hopkins' counsel at the time of his representation. So you're saying we should be looking at the state of the law at the time of counsel's conduct to determine the competency of his behavior? To determine the competency, and Mr. Hopkins' counsel, the law was entirely unclear, and it was clear in the Third Circuit as to where this court had directed it to go. So from your point of view, it was unnecessary for counsel for Mr. Hopkins to have looked to outside circuit law that might have been more beneficial to his position, because you think that the law in this circuit, at least the way the language in those cases were, really bound him? Yes, yes, as the other district courts in the circuit had followed as well. And with respect to the new law, old law rule, it's the government's position that it's not dispositive of this particular issue. The standard for what's a new rule and old rule is whether there was no other interpretation of the law was reasonable. In this case, there were other circuits that interpreted this exact same problem and found a reasonable interpretation that a district court did not have this authority. And under those circumstances, as well as a variety of other courts besides the circuits, finding that there was a reasonable interpretation to find contrary to Setzer, as the dissent did, as well as the Solicitor General of the United States and other authorities, all those reasonable interpretations ultimately found by the majority of the decision in Setzer as not being the more persuasive approach or interpretation of 3584. But it does make an indication that this really was a new rule for courts to follow from that point forward. All right. Thank you very much, Mr. Consiglio. How much time has been reserved? Thank you. Two minutes? Your Honor, just a couple of points on rebuttal. We heard that opposing counsel presenting the conduct of the defense attorney as a failure to predict a change in the law. We stand by our interpretation of Setzer, which should not be considered a new rule. It should be considered the rule as it standed at the time. The Supreme Court opinion does not indicate in any way that this was a change in the current position of the power of the sentencing judge and the law in general. What, on the other hand, that decision makes abundantly clear is that they were simply clarifying what the power of the sentencing judge was at the time. I was a district judge at that time, and I didn't think I had the authority at that time to impose a sentence concurrent to a yet-to-be-imposed state court sentence, and I understood that to be the law at the time. Let's say the argument had been made, how would we have known it would have made any difference? Or it took five or six years for Setzer to come out that this case, Hopkins, didn't make it up to the Supreme Court on this issue. Your Honor, there was some confusion about it, which is why Setzer was taken on appeal by the Supreme Court and this issue was clarified, precisely because there was confusion. The fact that the defendant attorney did not even make argument with regard to this issue goes precisely towards the ineffective assistance that Mr. Hopkins received. Precisely because there was a good foundation to make such an argument, counsel should have made it. And again, taking into account the sentencing transcript, there is a reasonable probability that the sentencing judge would have ordered concurrent sentences. Thank you. Thank you very much. Thank you to all of counsel. Thank you to the Duquesne Law School Clinic very much for your assistance to the court here and to your client. Before we call the next case, we'll take a five-minute recess.